## HUGHES v. JONES et al.

No. 1547.

Court of Civil Appeals of Texas. Eastland.

April 17, 1936.

Lee R. York, of Abilene, for appellant.

Wagstaff, Harwell, Wagstaff & Douthit, Stinson, Hair, Brooks & Duke, J. McAllister Stevenson, and Lindsay Walden, all of Abilene, for appellees.

FUNDERBURK, Justice.

Hal Hughes, plaintiff in the court below, by this suit sought judgment against Clay Jones and ten other defendants for abatement of alleged nuisances consisting of slaughter houses, stock feed pens, and hog pens near Abilene, but outside the city limits. The allegations of plaintiff's petition related to all the defendants alike, except that it was averred that defendants Clay Jones, Joe Henshaw, Rose Childers, and J. McAllister Stevenson were the owners of certain described real estate and that "said property is rented or leased to various and sundry parties, to-wit, Sam Kennedy, Clyde Oldham, Wiley Walden, W. W. Fambrough, Ed Kent, L. H. Harrison and W. W. Middleton, defendants hereinabove named, who are and for some time last past have been operating a slaughter house, stock feed pens, hog pens and other purposes incident to said uses, all of which is being permitted by the said owners of the said property; and plaintiff is further informed and believes and so alleges the fact to be that Clay Jones and Joe Henshaw aforesaid are operating and conducting a slaughter house, on the said premises." Otherwise than as just stated, all the property was regarded as a unit, being referred to as "said premises," and all the acts of the defendants were alleged as if they were joint and related to the same thing.

The issues being duly joined, the trial was had without a jury, and judgment rendered against the plaintiff and in favor of the defendants, except W. W. Middleton, as to whom the case was dismissed. Plaintiff has appealed.

It is contended that: "The court erred in finding of fact No. 3, because such finding is a mere conclusion and is not supported by the evidence in this case." It is no valid objection that the finding is "a mere conclusion." It ought to be a conclusion. The statute requires the judge to state in writing *"the conclusions of fact* found by him separately from the conclusions of law." (Italics ours.) R.S. 1925, art. 2208. No good reason is apparent why the conclusions of fact required to be filed by a trial judge should be very much more comprehensive than the issues submitted to a jury. When a judge undertakes to state his conclusions of fact, he should, no doubt, in order that they be full and complete, include, in addition to what would be embraced in the

verdict of a jury upon special issues, his conclusions upon the issues supported by the uncontroverted evidence and those not supported by any evidence. There is no more reason why the conclusions of fact of the judge should detail mere evidentiary facts than should special issues submitted to a jury.

Upon the contention that the finding is not supported by the evidence, we take it to mean that there is wholly wanting any evidence to support the finding. An examination of the statement of facts convinces us that the judge's conclusion of fact is not without support in the evidence. It is not a question of there being some evidence, or even a preponderance of the evidence, to show the contrary. Where there is involved, as here, questions of the credibility of witnesses and the weight to be given the evidence, an appellate court cannot reverse a judgment simply upon its conclusion that a finding is against even the preponderance of the evidence. No assignment of error calls upon us to determine a question of the insufficiency of the evidence as contradistinguished from a question of want of evidence. Hall Music Co. v. Robertson, 117 Tex. 261, 1 S.W.(2d) 857.

Another assignment of error is: "The court erred in his finding No. 4 to the effect that he could not tell where the odors were coming from, and to the effect that the conditions causing the trouble complained of had been remedied prior to September 1, 1934, because this finding is not supported by the evidence and is contrary to the preponderance of the evidence in this case." What has already been said is equally applicable here. The trial judge in stating that he could not tell where the odors were coming from thereby, in effect, declared that plaintiff had failed to discharge the burden of showing by a preponderance of the evidence that any particular thing complained of as a nuisance was such. The evidence did not show that each of the defendants was liable for the acts of all other defendants. There was no such connection shown between the acts of Jones and Henshaw with reference to the operation of the slaughter house owned by them, and the acts of Fambrough and Walden with reference to the operation of their slaughter house as to make the former liable for the acts of the latter, or vice versa. In Sherman Gas & Electric Co. v. Belden, 103

Tex. 59, 123 S.W. 119, 121, 27 L.R.A. (N.S.) 237, it was said: "It appears from the evidence that near to plaintiffs' home was an ice plant, a woodyard, and a railroad switching yard, which may have contributed to cause the nuisance complained of. The Gas & Electric Company is responsible only for the injury caused by the operation of its plant." What we mean to say is that if the pleadings undertook to charge a joint tort against all defendants, the evidence did not conclusively so show. We consider the conclusion of fact of the trial judge to the effect that the evidence did not show where the odors were coming from had support in the evidence. The same is true of the conclusion that the condition causing the trouble complained of had been remedied.

██ By another assignment it was alleged that: "The court erred in his conclusions of law to the effect that the plaintiff is not entitled to recover because the said slaughter houses and feed pens have been maintained on said premises for more than thirty years, because the evidence shows in this case that the slaughter houses and feed pens were a continuing nuisance and the limitation does not run against continuing nuisances." The conclusion thus assigned as error was: "I conclude, as a matter of law, that since the suit was for the abatement of the feed pens and slaughter houses, and for enjoining their use as such, and not a suit for damages for negligent use thereof, and the said feed pens and slaughter houses have been maintained on said premises for more than thirty years, that the plaintiff has shown no right to recover and for that reason judgment was rendered in favor of the defendants."

It seems to be fairly well settled by the decisions in this state that in an action to abate a nuisance, public or private, prescription or limitation is no defense. 31 Tex.Jur. p. 418, § 8; Rhodes v. Whitehead, 27 Tex. 304, 84 Am.Dec. 631; Gose v. Coryell, 59 Tex.Civ.App. 504, 126 S. W. 1164; Boyd v. Schreiner (Tex.Civ. App.) 116 S.W. 100; City of Ennis v. Gilder, 32 Tex.Civ.App. 351, 74 S.W. 585; City of Corsicana v. King (Tex.Civ.App.) 3 S.W.(2d) 857; City of Dallas v. Early (Tex.Civ.App.) 281 S.W. 883; Richardson v. Lone Star Salt Co., 20 Tex.Civ.App. 486, 49 S.W. 647. If, therefore, said conclusions of law are reasonably capable of no other construction than one showing that the sole basis of the judgment is the finding of prescription or limitation, a serious question would be presented. But the statement of the judge's conclusions of law is at least ambiguous and calls for construction. The conclusion stated is not expressly that the cause of action was barred by prescription or limitation, but that "plaintiff has shown no right to recover." If the sole basis of the judgment was the finding of limitation or prescription, then by far the greater part of the conclusions of fact was superfluous. We think the conclusions of law considered with the conclusions of fact are susceptible of the construction that in the view of the trial judge no right of abatement was shown because the hurt or injury to the plaintiff which the evidence established was not traceable to the slaughter houses and feed pens, and if a cause of action existed, it was one for damages for negligence and not abatement.

The decision in Galveston, H. & S. A. Ry. Co. v. DeGroff, 102 Tex. 433, 118 S.W. 134, 21 L.R.A.(N.S.) 749, is authority for the proposition that, granting the existence of a nuisance, the right to an abatement thereof as a remedy may be defeated by the existence of laches, and also of an adequate remedy at law, not as in themselves absolute defenses, but as matters of equitable consideration in arriving at a just conclusion to be reached by regarding the relative injuries to be suffered by the plaintiff from a continuation of the nuisance and of the defendant from an abatement thereof, and a balancing of one against the other. Upon these principles we think the judgment in this case is supported by the conclusions of fact and law and that the evidence supports the conclusions of fact, at least to such extent that it cannot be said as a matter of law that there exists no support in the evidence. In this view the reference in the conclusions of law to the thirty years' maintenance of the feed pens and slaughter houses would relate to laches, rather than prescription or limitation.

If, as the trial judge concluded, the slaughter houses and feed pens were not nuisances except as the result of a negligent use or operation thereof, the remedy of abatement was, under all the facts, not available to the plaintiff. The evidence showed the investment of two defendants in one of the slaughter houses to be $12,000 and that of another defend-

ant in the other slaughter house was about $7,000. There was further evidence to the effect—such being also the conclusion of the trial judge—that the abatement of these slaughter houses and an injunction against their use as such would amount practically to a destruction of the investments therein. If they were not nuisances except because of the negligent use thereof, then there was shown no adequate ground for abatement, which, being the only relief sought, required the judgment for defendants. The best statement of the principles involved which we have found is in Gulf, C. & S. F. Ry. Co. v. Oakes, 94 Tex. 155, 58 S.W. 999, 1000, 52 L.R.A. 293, 86 Am.St.Rep. 835, wherein Judge Williams, speaking for the Supreme Court, said:

"It is a general principle of the law that the owner of property may use it as he chooses in any lawful way; but another maxim, in general terms, requires him to so use it as not to injure another. The application of these principles gives rise to some of the most difficult questions and delicate distinctions known to the law. Bishop concisely states the general doctrine thus: 'One may not, either voluntarily or negligently, cast earth or other substance from his own ground on a neighbor's; or upon his own bring or erect anything, or change the natural position of anything, from which the air, the moving water, or any other force of nature will bear to another on other land what is distinctly injurious to him; or, by any excavation, structure, or other change of his premises from their natural condition, render them unsafe to other persons and their property lawfully thereon; while yet these restraints will not be drawn so closely as substantially to deprive him of the use of his lands, or the ordinary pursuit of his own interests, or to render him answerable for inevitable accidents injuring others.' Noncont.Law, § 829.

"Since the owner may use his land as he chooses, if he does not violate any law, and is not to be substantially deprived of its use or of the ordinary pursuit of his own interests, but, at the same time, is required in its use to avoid injury to another, it at once follows that he may be required to forego a particular use when it is not essential to the substantial enjoyment of his property, and is fraught with unreasonable loss to his neighbor.

On the other hand, the particular use may be so important to the owner, and the loss or inconvenience to his neighbor so slight compared to his, were he forbidden to so employ his property, that it would be unreasonable and unjust to impose such a restriction. In such cases, it is evident that all of the circumstances of the situation must be taken into consideration. The importance of the use to the owner, as well as the extent of the damage to be inflicted upon his neighbor, and the rights of the parties, are to be adjusted in a practical way; the question being whether or not the proposed use is a reasonable one, under all the circumstances."

Under this principle, we think that where a nuisance exists only as the result of negligence and great injury would result to the owners from an abatement of a lawful business or occupation, amounting practically to the destruction of the property employed in the business, that a case is presented justifying the refusal of the court to decree an abatement. The conclusions of fact and law of the trial judge, we think, show this to be such a case and we are therefore of the opinion that the judgment should be affirmed, which is accordingly so ordered.