**Reversed and Remanded and Opinion filed July 25, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00619-CV

---

### TEXAS CENTRAL PARTNERS, LLC, Appellant

### V.

### GRIMES COUNTY, TEXAS, Appellee

---

**On Appeal from the 506th District Court**
**Grimes County, Texas**
**Trial Court Cause No. 33,725**

---

## O P I N I O N

Grimes County filed a common-law public-nuisance suit against two companies, alleging that they unreasonably interfered with the public's use of roads and seeking a permanent injunction. One of the companies appeals from the trial court's final judgment granting the county's summary-judgment motion and issuing a permanent injunction. Concluding that the summary-judgment evidence did not conclusively prove the county's claim for common-law public nuisance, we reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

After contractors doing surveying work for a project of appellant/defendant Texas Central Partners, LLC, placed pins and markings in various county roadways, Grimes County sued Texas Central and defendant Pacheco Koch Consulting Engineers, Inc. (the "Texas Central Parties"), asserting a single claim for common-law public nuisance. Grimes County sought only injunctive relief. The trial court granted Grimes County's motion for a traditional summary judgment on this claim and granted a final summary judgment, permanently enjoining the Texas Central Parties and their agents from "performing survey(s) or other studies which damage, alter, or impair county-maintained rights of way." The trial court also overruled all of Texas Central's objections to Grimes County's summary-judgment evidence. Pacheco Koch has not appealed. In this appeal, Texas Central asserts that (1) the trial court erred in granting summary judgment in Grimes County's favor, and (2) the trial court erred in overruling Texas Central's objections to two affidavits.

## II. ANALYSIS

### A. Did the trial court err in overruling Texas Central's objections to the affidavits of Ben Leman and Gregory Blake?

In its second issue, Texas Central asserts that the trial court erred in overruling its objections to Grimes County's summary-judgment evidence.

The trial court overruled Texas Central's objections that the following statements, contained in the affidavits of Ben Leman or Gregory Blake, are conclusory:

- "[Texas Central] and its agents intentionally interfered with . . . county roads."

2

- "Such actions by [the Texas Central Parties] impaired the use of the roads and rendered the roads less commodious for public use while [the Texas Central Parties] were performing such acts."

- "Such actions put the individuals performing the work at risk as well as the traveling public."

- "Such actions have resulted in unreasonable interference with a right common to the public and an unreasonable discomfort or annoyance of persons with ordinary sensibilities. Such actions put at risk the public health, safety and welfare and they impair [Grimes County's] ability to maintain county roads."

Because these statements are conclusory, they cannot support a summary judgment in Grimes County's favor, and the trial court abused its discretion in overruling Texas Central's objections.[1]  *See McIntyre v. Ramirez*, 109 S.W.3d 741, 749–50 (Tex. 2003); *Heritage Operating, L.P. v. Barbers Hill Indep. Sch. Dist.*, 496 S.W.3d 318, 330–32 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

The trial court overruled Texas Central's objections to the following statements, contained in the affidavits of Leman or Blake, on the ground that the testimony is speculative:

- "[T]he specific surveying techniques utilized would likely not have been permitted given their invasive and offensive nature which materially affected the road surface."

- If additional pins and markings were placed in roadways without the Grimes County's knowledge, they "could cause devastating effects and irreparable injury should one of our heavy duty hydraulic machines uncover one of the

---

[1] Because conclusory statements are incompetent to support a summary judgment, we could not use these statements as a basis to support the trial court's summary judgment, even if Texas Central had failed to object and even if Texas Central did not argue that these statements are conclusory on appeal. *See Elizondo v. Krist*, 415 S.W.3d 259, 264 (Tex. 2013).  The statements by Leman and Blake that "[i]nadequate safety precautions were taken which left the public and the surveyors at risk of harm," likewise are conclusory and incompetent. *See id.*

pins in the right of way easement, unintentionally turning it into a fast moving projectile."

Because these statements are speculative, the trial court abused its discretion in overruling Texas Central's objections to them. *See Natural Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 156, 161 (Tex. 2012).

## B.      Did the trial court err in granting summary judgment?

In its first issue, Texas Central asserts that the trial court erred in granting a traditional summary judgment in Grimes County's favor. To prove its entitlement to a summary judgment granting a permanent injunction, Grimes County had to conclusively prove that Texas Central is liable under at least one claim. *See Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 625 n.2. (Tex. 2011) (holding that permanent injunction is available only if liability is established under a claim); *Roper v. Jolliffe*, 493 S.W.3d 624, 633 (Tex. App.—Dallas 2015, pet. denied) (concluding that trial court lacks discretion to issue permanent injunction unless plaintiff establishes at least one valid claim). The only claim that Grimes County pleaded in its live pleading was common-law public nuisance. In its summary-judgment motion, Grimes County relied upon its common-law public-nuisance claim and asserted that the trial court should grant a permanent injunction because Grimes County had established the required elements of (1) a wrongful act, (2) imminent harm, (3) irreparable injury, and (4) the absence of an adequate remedy at law. Under its first issue, Texas Central argues that the summary-judgment evidence does not conclusively prove Texas Central's liability under the common-law public-nuisance claim or any of the four elements required to show entitlement to a permanent injunction.

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of

law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). To facially establish its right to judgment as a matter of law, Grimes County had to conclusively prove each of the essential elements of its common-law public-nuisance claim. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986) (per curiam); *Security Nat. Ins. Co. v. Waloon Inv.*, 384 S.W.3d 901, 905 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

To be entitled to summary judgment based on its common-law public-nuisance claim, Grimes County had to conclusively prove the existence of a public nuisance, which is "a condition that amounts to 'an unreasonable interference with a right common to the general public.'" *Jamail v. Stoneledge Condominium Owners Ass'n*, 970 S.W.2d 673, 676 (Tex. App.—Austin 1998, no pet.) (quoting Restatement (Second) of Torts § 821B(1) (1979)).

Attached to Grimes County's summary-judgment motion as Exhibit A were three photographs. The first photograph is a close-up of a Pacheco Koch metal pin, apparently pressed into the surface of a roadway. The second photograph

5

shows the surface of a roadway with a painted cross on it and a pin in the center of the cross. The third photograph shows a wooden stick with a flag just beyond the paved part of a roadway next to a painted cross with a pin near the edge of the paved portion of a roadway.

Attached to Grimes County's summary-judgment motion as Exhibit B is the affidavit of Ben Leman, the County Judge for Grimes County. After removing the inadmissible parts of Leman's affidavit testimony discussed in section II.A. above, Leman testified as follows on issues relevant to Texas Central's liability for a common-law public nuisance:

- On or about April 1, 2016, employees or agents of Pacheco Koch were discovered to have driven metal pins into the roadway surface of one or more county-maintained roadways, including Grimes County Roads 178, 215, 302, and 313. These employees and agents also had painted markings in one or more county-maintained roadways. This conduct caused damage to these roadways. Upon discovery of the pins and markings in the county roadways, the Pacheco Koch employees were instructed to immediately stop their damage to county roads and to make repairs.

- Texas Central authorized the conduct described in the last paragraph as part of its ongoing effort to survey real property for the proposed purpose of acquiring an interest in certain real property upon which Texas Central intends to construct a high-speed railway line between Dallas and Houston (the "Project"). Texas Central had contracted with Towill, Inc., an entity that subcontracted the work in question to Pacheco Koch.

- Texas Central and its agents caused damages to county roads without even attempting to contact local authorities for permission or to notify such authorities that they would be doing work on county roads. The Texas Central agents were discovered only after a citizen noticed them working on a county road.

- The Texas Central Parties failed to consult with, or request permission from, Grimes County or its designee for road and bridge issues before placing the metal pins and painting markings in the county-maintained roadways. Grimes County requires the submission and approval of a permit for

6

activities that will cause damage to county-maintained roads or interfere with right-of-way purposes. The Texas Central Parties should have sought a permit for the proposed survey activities. These actions affected the surface of the roads in question, and they impacted Grimes County's maintenance of them.

- The Texas Central Parties' actions in parking vehicles in the county rights of way, having individuals exit their vehicles in such rights of way, having such individuals walking, standing, or working in such rights of way and roadways, having such individuals tampering with the causeways of county roads by inserting pins or painting markings on such roads all put not only the individuals at risk of being struck by the traveling public but also (1) jeopardized the safety of the traveling public who will be forced to negotiate such obstacles and ignore any markings upon the pavement and (2) impaired the maintenance of such rights-of-way wherein foreign, strange, and unauthorized objects and markings have altered such roadways, especially when no notice to Grimes County has been given and no permit obtained.

Attached to Grimes County's summary-judgment motion as Exhibit C is the affidavit of Gregory Blake, the Road and Bridge Administrator for Grimes County. After removing the inadmissible parts of Blake's affidavit testimony discussed in section II.A. above, Blake testified as follows on issues relevant to Texas Central's liability for a common-law public nuisance:

- Blake reviewed Texas Central's Motion for Summary Judgment. Although the repairs of County Roads 178, 215, 302 and 313 were made and initially accepted by Blake on behalf of Grimes County as indicated in the motion, that motion failed to include the concerns Blake expressed about the degradation of the repairs on County Road 302.

- The photographs attached to Blake's affidavit were taken on or about July 27, 2016, less than five months after the damages were discovered on April 1, 2016. The attached photographs are a fair and accurate representation of the markings and the pin located on County Road 302 as they appeared on July 27, 2016. Blake has concerns that the repairs were insufficient and will further degrade upon the continued use of the roads.

- The monument marker on County Road 302 has not been removed and the sealant applied did not adhere to the roadway or was not mixed correctly. A

7

representative of Towill, Inc. made additional markings in the roadway following the repairs. A monument pin remained in the location on County Road 302 despite Blake's request that all identifying markers and pins within roadways or easements be removed.[2]

Attached to Blake's affidavit are three photographs. The first shows what appears to be a painted cross marking on a paved road, without any pin in the center. The second photograph shows a painted arrow and other painted markings on the edge of a paved road. The markings in this photograph apparently are the additional markings on County Road 302 that Blake says were made after the repairs. The third photograph appears to be of a pin placed in an unpaved area. In his deposition, Blake testified that this pin is in a ditch on the side of County Road 302 that is unpaved but still part of the right of way.[3]

The summary-judgment evidence does not address the following issues:

(1)     How many pins and markings were put on the roadways?

(2)     How many of the pins and markings were in a traffic lane of a roadway?[4]

(3)     To what extent do the pins interfere with the public's ability to travel on the roadway?

(4)     To what extent do the markings interfere with the public's ability to travel on the roadway?

(5)     What specific danger, if any, do the pins or markings pose to a vehicle traveling over them?

(6)     In the ordinary course of surveying, do the surveyors remove the pins and markings after they are finished?

---

[2] Some of Blake's testimony duplicates Leman's testimony. That testimony has not been restated here.

[3] Attached as Exhibit D to Grimes County's summary-judgment motion are maps relating to the Project. Texas Central incorporated into its summary-judgment response excerpts from the depositions of Leman and Blake.

[4] Some photographs suggest that at least some of the markings and pins were placed on the roadway's shoulder.

(7)    How much does a pin weigh?

(8)    How likely is it that a vehicle traveling over a roadway with a pin in it might launch the pin into the air?

We do not suggest that the answers to all of these questions are necessary to prove a public nuisance. But, the summary-judgment evidence does not contain much information about the pins and markings and the extent to which either of these items interfere with a right common to the general public. The photographs in the summary-judgment record reasonably could be viewed as showing that vehicles could travel safely on a road with these pins and markings. The cases Grimes County cites do not involve such a slight inference. *See, e.g, Jamail*, 970 S.W.2d at 676 (alleged public nuisance was a locked gate across a public roadway).

On this record and under the applicable standard of review, we conclude that the summary-judgment evidence does not conclusively establish "a condition that amounts to 'an unreasonable interference with a right common to the general public.'" *See Curtis v. Baker*, No. 14-17-00859-CV, 2018 WL 6684263, at *4–6 (Tex. App.—Houston [14th Dist.] Dec. 20, 2018, no pet.) (mem. op.); *Jamail*, 970 S.W.2d at 676. Because the summary-judgment evidence does not establish as a matter of law that Texas Central is liable under the common-law public-nuisance claim, the trial court erred in granting summary judgment and in granting a permanent injunction. *See Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 625 n.2. We need not and do not address Texas Central's argument that the evidence does not prove as a matter of law (1) a wrongful act, (2) imminent harm, (3) irreparable injury, and (4) the absence of an adequate remedy at law. *See id*.

Grimes County relies upon an alleged public statement by a representative of Texas Central. But, our appellate record does not contain this statement, and with

9

limited exceptions not relevant to this item, an appellate court may not consider matters outside the appellate record. *See In re C.C.E.*, 530 S.W.3d 314, 317 n.1. (Tex. App.—Houston [14th Dist.] 2017, no pet.).

Grimes County suggests that if this court reverses the trial court's judgment, we would be condoning the activities of which Grimes County complains or we would be suggesting that Grimes County has no remedy at all or is limited to money damages. The issue we address is whether the summary-judgment evidence conclusively establishes a common-law public nuisance. By concluding that it does not, we do not condone any activity. We do not rule that Grimes County has no remedy or is limited to money damages, nor do we address whether Grimes County may have any other claim as a result of the activities of which it complains.

### III. CONCLUSION

The trial court abused its discretion in overruling the objections to the summary-judgment evidence discussed in section II.A. above. To this extent, we sustain the second issue, and we need not address the remainder of the second issue. Because the summary-judgment evidence does not conclusively establish a common-law public nuisance, the trial court erred in granting Grimes County's summary-judgment motion. Therefore, we sustain the first issue, reverse the trial court's judgment, and remand for further proceedings in accordance with this opinion.


/s/    Kem Thompson Frost
        Chief Justice

Panel consists of Chief Justice Frost and Justices Christopher and Bourliot.

10