NO. 07-06-0146-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 30, 2008
_____

WAYNE POPE AND LAURA POPE, APPELLANTS

V.

JOHN KIELLA HOMES, JOHN KIELLA, INDIVIDUALLY,
KAM HOME BUILDERS, KIELLA FAMILY, LTD.,
KIELLA MANAGEMENT, L.C.,  APPELLEES
_____

FROM THE 146TH DISTRICT COURT OF BELL COUNTY;

NO. 203,426-B; HONORABLE RICK MORRIS, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellants Wayne and Laura Pope appeal from a summary judgment in favor of

appellees John Kiella Homes, John Kiella, Individually, Kam Home Builders, Kam Family,

Ltd., Kiella Management, L.C., (hereinafter "Kiella"). Finding no error, we affirm.

Background

The Popes brought suit against Kiella and the City of Temple after their home was flooded following heavy rains. Kiella was the developer of Briarcrest, a residential subdivision situated uphill from the Popes' neighborhood. Wayne Pope and others had opposed Briarcrest's construction when Kiella proposed the subdivision in 1996, expressing, among other concerns, potential problems with drainage. The City denied Kiella a permit for the subdivision that year. Kiella made changes to address the expressed concerns and, despite continued objections from the Popes and others, the City approved its development in 1997.

The Popes' home first was flooded in late August or early September 2001 after a heavy rain. It was flooded again in October 2003, again after heavy rainfall. The Popes contend the construction of Briarcrest diverted runoff from rainfall, increasing the volume of water in the adjacent street and ultimately causing the flooding of their home.

The Popes filed suit on April 12, 2004.[1] The court dismissed their claims against the City, an action not challenged on appeal. The Popes' amended pleadings asserted claims against Kiella based on Texas Water Code § 11.086,[2] nuisance, trespass and gross negligence.

---

[1] Some defendants were not added until later, but those dates are not material to our disposition of the appeal.

[2] Tex. Water Code Ann. § 11.086 (Vernon 2000).

By an amended answer, Kiella raised the affirmative defense of limitations as a bar to the Popes' claims.  Kiella filed motions for summary judgment under sections 166a(c) and 166a(i) of the Rules of Civil Procedure, attacking the Popes' claims on numerous grounds.  By traditional motion, Kiella asserted all the Popes' claims against Kiella were barred by limitations.  The court granted Kiella's motions without specifying the grounds on which it granted them, and signed a take-nothing judgment.  This appeal followed.

Analysis

On appeal, via four issues, the Popes contend the trial court erred by granting summary judgment against them on their Texas Water Code, trespass and nuisance claims, and erred by granting summary judgment against them on all their claims based on Kiella's statute of limitations defense.

Standard of Review

Our review of a summary judgment is *de novo* to determine whether a party's right to prevail is established as a matter of law. Tex. R. Civ. P. 166a(c); *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex. 1995).  We take as true all evidence favorable to the non-movant, and indulge every reasonable inference and resolve any doubt in the non-movant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).  For a movant to prevail on a traditional motion for summary judgment, he must conclusively establish the absence of any genuine question of material fact and that he is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c).  Where the movant is a defendant, he must negate at least one essential element of the plaintiff's cause of action.  Likewise,

3

a defendant who conclusively establishes each element of an affirmative defense is entitled to summary judgment. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995).

Once the movant has established a right to summary judgment, the non-movant has the burden to respond to the motion for summary judgment and present any issues which would preclude summary judgment. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979). Issues not expressly presented to the trial court in writing shall not be considered on appeal as grounds for reversal. Tex. R. Civ. P. 166a(c). All theories in support of, or in opposition to, a motion for summary judgment must be presented in writing to the trial court. *Casso v. Brand*, 776 S.W.2d 551, 553 (Tex. 1989).

A motion for summary judgment must expressly present the grounds on which it is made and must stand or fall on these grounds alone. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997). When, as here, a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious. *FM Properties Operating Co. v. City of Austin,* 22 S.W.3d 868, 872-73 (Tex. 2000); *Star-Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex. 1995).

Affirmative Defense of Limitations

We begin with the Popes' fourth issue, in which they assert the trial court erred if it based summary judgment on the bar of limitations. We disagree, and find the issue dispositive of the appeal.

A defendant moving for summary judgment on the affirmative defense of limitations has the burden to (1) conclusively prove when the cause of action accrued and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised.[3] *Diversicare Gen. Partner*, *Inc. v. Rubio,* 185 S.W.3d 842, 846 (Tex. 2005); *Graham v. Pirkey,* 212 S.W.3d 507, 510-11 (Tex.App.–Austin 2006, no pet.). If a movant establishes that the statute of limitations bars an action, the non-movant must then adduce summary judgment proof raising a fact issue in avoidance of limitations. *Graham*, 212 S.W.3d at 510-11.

The Popes' claims against Kiella for nuisance, trespass and violation of Water Code § 11.086 all have a limitations period of two years. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (Vernon 2005) (person must bring suit for, *inter alia*, "trespass for injury to the estate or to the property of another" not later than two years after the day the cause of action accrues); *Schneider Nat'l Carriers, Inc. v. Bates,* 147 S.W.3d 264 (Tex. 2004) ("limitations period for a private nuisance claim is two years"); *Anders v. Mallard & Mallard, Inc.,* 817 S.W.2d 90, 95 (Tex.App.–Houston [14th Dist.] 1991, no writ) (two-year statute of limitations applies to claims brought under § 11.086 of Texas Water Code).

---

[3] No discovery rule issue is involved in this case.

The question is when the Popes' causes of action accrued. Accrual of limitations is a question of law. *Schneider Nat'l*, 147 S.W.3d at 274-75. We begin with the Popes' nuisance claim. A nuisance has been defined as a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities. *Id*. at 269. The accrual of a nuisance claim depends on whether the nuisance alleged is "permanent" or "temporary." A permanent nuisance claim accrues when injury first occurs or is discovered; a temporary nuisance claim accrues anew upon each injury. *Id*.

As our Supreme Court noted in its recent *Schneider National* opinion, the date of accrual of a nuisance cause of action for limitations purposes is one of three consequences that result from the categorization of a nuisance as permanent or temporary.[4] *Schneider Nat'l*, 147 S.W.3d at 275. Discussing categorization in the context of accrual of the nuisance cause of action, the court there began with the general rule that a cause of action accrues and limitations begins to run when facts exist that authorize a claimant to seek judicial relief. *Id*. at 279. Continuing, the court said:

> As nuisance claims arise only upon a *substantial interference* with property use, they normally do not accrue when a potential source is under construction; instead, a landowner "has the right to wait and see what the result will be when the improvements are subjected to an actual test." But once operations begin and interference occurs, limitations runs against a

---

[4] The other two contexts in which the categorization as permanent or temporary arises are when a court determines whether a particular nuisance must be addressed in one suit or a series of suits (or, phrased differently, whether res judicata will bar a recovery of damages for nuisance when there has been an earlier recovery), and when it determines whether future damages are recoverable in a nuisance suit. *Schneider Nat'l*, 147 S.W.3d at 275-76.

6

nuisance claim just as against any other. *Id*. (emphasis in original; internal citations omitted)

We find the Supreme Court's rationale and language directly applicable here. The factual allegations in the Popes' petition begin with Kiella's 1996 application for approval to build Briarcrest. The petition then asserts: "Plaintiffs and others in their neighborhood were concerned that the prospect of a new subdivision would affect the amount of runoff water that would move directly from the proposed subdivision on to their property. Plaintiffs formally objected to the project but [Kiella] was permitted to go forward with construction."

The "actual test," *Schneider Nat'l*, 147 S.W.3d at 279, came in 2001. The flooding, which was the very interference with their enjoyment of their own property the Popes feared, occurred. The summary judgment record makes clear the Popes regarded the 2001 flooding as proof their objections to the construction of Briarcrest were well founded. Responding to an interrogatory, the Popes stated a member of the Temple City Council and two City engineers came to their home late on the day of the 2001 flooding, after they called the City. During that visit, the Popes "reminded them of the formal protest of the development and that our neighborhood had concerns that when more water was added to the streets in our area we would have problems."

The instant suit involves more than the physical damages to the Popes' residence caused by the floodwaters. To another interrogatory asking about their claimed damages, the Popes responded that damages to be considered by the jury included diminution in the market value of the house and "future damages if flooding should occur again."

The Popes point to the court's statement in *Schneider National* that the occurrence of a nuisance "several times in the years leading up to a trial" is likely to give jurors enough evidence of the nuisance's frequency and duration to evaluate its impact on property values, leading to the conclusion the nuisance should be treated as permanent.[5] *Schneider Nat'l,* 147 S.W.3d at 280. They argue the occurrence of flooding only twice, in 2001 and 2003, from a subdivision completed in 1997, does not meet that standard.

We disagree. The record demonstrates that the nuisance for which the Popes have sued is a recurrent one. The source they blame for their injuries, the Briarcrest subdivision, is permanent.[6] Addressing the question whether characterization of a nuisance as permanent or temporary should focus on the defendant's operations or the plaintiff's injury, the court held that "a permanent nuisance may be established by showing that either the plaintiff's injuries or the defendant's operations are permanent." *Id*. at 283. That recurrence of the injury is dependent on a sufficiently heavy rain does not make the nuisance temporary. *Id*. at 283; *City of Amarillo v. Ware*, 120 Tex. 456, 40 S.W.2d 57, 61-62 (1931). Nor are the two flood injuries documented in the summary judgment record "so irregular or intermittent" that "future injury cannot be estimated with reasonable certainty." *Schneider Nat'l*, 147 S.W.3d at 281. We find the Popes allege a permanent nuisance caused by the

---

[5] The Popes also refer to the court's similar statement that if a nuisance occurs "at least a few times a year," jurors should be able to evaluate its impact with reasonable certainty, again leading to the conclusion the nuisance is permanent. *Id*. at 280.

[6] *Cf. Plough v. Reynolds*, No. 13-03-741-CV, 2006 WL 328120 (Tex.App.–Corpus Christi, Feb. 9, 2006, no pet.) (mem. op.) (applying *Schneider Nat'l*, and finding nuisance temporary when caused by acts of vandalism and other willful and occasional acts whose future occurrence was uncertain).

Briarcrest subdivision, and that facts existed on the occurrence of the 2001 flooding that authorized them to seek judicial relief against Kiella for the nuisance they assert. The nuisance cause of action then accrued, and became barred by limitations two years later. The court did not err by granting summary judgment on the Popes' nuisance claim.

The parties agree that the timeliness of filing of the Popes' trespass claim also depends on whether they assert permanent or temporary damage to their property. *See, e.g., Waddy v. City of Houston*, 834 S.W.2d 97, 102 (Tex.App.–Houston [1st Dist. 1992, writ denied) (action for trespass by permanent damage to land accrued, for limitations purposes, on discovery of first actionable injury). *See also* Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (Vernon 2005). Our determination that the Popes' nuisance claim involved permanent damage to their property, requires the same conclusion with respect to their trespass claim. We find it also accrued on the occurrence of the 2001 flooding, and was properly subject to Kiella's affirmative defense of limitations.

As noted, courts also have applied a two-year statute of limitations to claims for damages under § 11.086 of the Texas Water Code. *Graham*, 212 S.W.3d at 512; *Anders*, 817 S.W.2d at 95. No contention is made that the claim for damages under that statute asserted in this case accrued at any later date than the nuisance or trespass claims. Accordingly, we find the trial court did not err by granting summary judgment as to that claim as well.

We overrule the Popes' fourth issue. Because we find Kiella conclusively established entitlement to judgment based on the affirmative defense of limitations, we need not

9

address the Popes' other issues.  Tex. R. App. P. 47.1.  Accordingly, we affirm the trial court's take-nothing judgment.


James T. Campbell
Justice